UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In re ENRON CORP. et al,                    05 Civ. 10164 (JGK)

                    Debtors.               <u>OPINION AND ORDER</u>


_____


TAUNTON MUNICPAL LIGHTING PLANT,

                    Appellant,

        - against -

ENRON CORP. et al.,

                    Appellees.
═══════════════════════════════════

JOHN G. KOELTL, District Judge:

        The appellant, Taunton Municipal Lighting Plant

("Taunton"), appeals from an order of the United States

Bankruptcy Court for the Southern District of New York

(Arthur J. Gonzalez, J.) disallowing and expunging Taunton's

proof of claim filed against the debtors/appellees, Enron

Corporation and certain of its affiliates (collectively

"Enron").  The Bankruptcy Court's decision is published at

330 B.R. 387 (Bankr. S.D.N.Y. 2005) under the title <u>In re</u>

<u>Enron Corp.</u>  For the reasons explained below, the order of

the Bankruptcy Court is **affirmed**.

## I.

When reviewing an order of the Bankruptcy Court, this Court acts as an appellate court.  Accordingly, this Court reviews the Bankruptcy Court's conclusions of law de novo but accepts that court's findings of fact unless they are "clearly erroneous."  See Fed. R. Bankr. P. 8013; see also In re Halstead Energy Corp., 367 F.3d 110, 114 (2d Cir. 2004).

## II.

The Bankruptcy Court made the following findings of fact, which this Court accepts because they are supported by the record and no party has argued that they are clearly erroneous.

Taunton is a Massachusetts municipal public power utility licensed by the Commonwealth of Massachusetts to provide electricity to the residents of the city of Taunton, Massachusetts, and several neighboring towns.  In re Enron Corp., 330 B.R. at 388.  On November 2, 2001, Taunton entered into a contract with a subsidiary of Enron that provided for Enron to sell electricity to Taunton from January 1, 2002 until December 31, 2007.  Id. at 387-88.  On December 2, 2001, one month after entering into this contract, Enron commenced the bankruptcy action in which

Taunton's current claim arose. Id. at 388. Despite Enron's filing of a bankruptcy petition, Taunton honored the contract and bought electricity from Enron at the price established in the contract, although electricity was available to Taunton from other sources at a lower price in early 2002. Id.

During 2002 the parties discussed soliciting replacement suppliers to provide electricity to Taunton but Enron continued to deliver electricity to Taunton during those negotiations. Id. On December 17, 2002, after electricity prices had risen higher than the price established in its contract with Taunton, Enron rejected the contract and ceased delivering electricity to Taunton on December 31, 2002. Because the contract specified that damages in the event of breach would be calculated based on the actual economic loss to the non-breaching party at the time of the breach, Taunton requested bids from other power providers and, based on the bids received, calculated that it had sustained damages of $6,658,885.00 (including $64,000 in costs). On November 24, 2003, Taunton filed its claim against Enron in that amount with the Bankruptcy Court, and Enron filed an objection to Taunton's claim on February 16, 2005. On September 21, 2005, the Bankruptcy Court issued its decision sustaining Enron's objection. On October 7,

2005, the Bankruptcy Court entered the order disallowing the claim. As explained in greater detail below, the Bankruptcy Court concluded that the plain language of Section 502(g) of the Bankruptcy Code required that damages resulting from the rejection of the contract be calculated as of the last business day before the filing of the bankruptcy petition on December 2, 2001, and that, using that date, there were no damages to Taunton. See In re Enron, 330 B.R. at 389 & nn.3 & 4, 392.

On this appeal, Taunton does not dispute that it suffered no damages from Enron's breach of its contract to supply Taunton with electricity for the duration of the contract, if those damages are determined on the last business day before Enron filed its bankruptcy petition. Taunton contends that the date of rejection of the contract should be the appropriate measuring date for determining damages from the breach. The Bankruptcy Court correctly concluded that damages should be measured from the last business day before filing the petition and not on the day the debtor rejected the contract.

### III.

### A.

The effective date of Enron's rejection of its contract with Taunton is established by Section 365(g)(1) of the Bankruptcy Code, which provides that the rejection of an executory contract "constitutes a breach of such contract ... immediately before the date of the filing of the petition" in the Bankruptcy Court. 11 U.S.C. § 365(g)(1). This provision is intended to allow a debtor, after filing a bankruptcy petition, to reject a contract rather than continue to abide by the contract.

Section 502(g) of the Bankruptcy Code, in the version in force at the time of Taunton's claim, further provided that a

> "claim arising from the rejection, under
> section 365 of this title ... of an executory
> contract ... shall be determined, and shall be
> allowed under subsection (a), (b), or (c), of
> this section or disallowed under subsection
> (d) or (e) of this section, the same as if
> such claim had arisen before the date of the
> filing of the petition."

11 U.S.C. § 502(g).[1]

---

[1] As discussed below, Section 502(g) was amended in 2005 by Section 910(b) of Public Law 109-8, 119 Stat. 23, 184-85. The previous language was designated as 11 U.S.C. § 502(g)(1) and an additional subsection, 11 U.S.C. § 502(g)(2), was added. The 2005 amendment has no retroactive effect and the parties agree that this claim is governed the statute in effect at the time of the claim.

It is clear that this version of Section 502(g) "cause[d] a rejection damage claim to be classified as a pre-bankruptcy claim," such that the other party to the contract has a claim equal to those of other creditors having unsecured claims against the debtor at the time the petition was filed. In re American Homepatient, Inc., 414 F.3d 614, 618 (6th Cir. 2005). Taunton argues that Section 502(g) was intended to do no more, and that the Bankruptcy Court misinterpreted the statute when it concluded that Section 502(g)'s text also required calculating damages resulting from a rejection claim based on what the damages would have been on the last business day before the date of the petition. Taunton asserts that the purpose of Sections 365(g) and 502(g) of the Bankruptcy Code was to create a legal fiction that ensures that claims arising from executory contracts rejected by the debtor are treated the same as claims arising before the petition. Taunton further asserts that this goal could be accomplished without using the last business day before the petition was filed for calculating damages under such a claim, and that there is no support in the legislative history of either section for also using that date to calculate damages. In effect, therefore, Taunton argues that, under the legal fiction created by the Bankruptcy Code, the breach and the claim

should be treated as arising pre-petition, but that damages should be calculated under the terms of the contract itself and in light of events occurring between the filing of the petition and the actual date of breach.  Taunton argues that damages should be determined as a matter of state law and that, under state law, damages are determined as of the date of the breach.

The Bankruptcy Court rejected this argument because it found that the phrase "shall be determined" in Section 502(g) would be rendered meaningless by the interpretation urged by Taunton.  In arriving at this interpretation of the statute, the Bankruptcy Court relied on the reasoning of the Court of Appeals for the Sixth Circuit in In re American Homepatient, Inc., 414 F.3d 614 (6th Cir. 2005).

The American Homepatient court, addressing an argument similar to the argument advanced by Taunton in this case, found that if Section 502(g) "does nothing more than cause a rejection damage claim to be classified as a pre-bankruptcy unsecured claim, use of the two words, 'determine' and 'allow,' would be unnecessary.  Indeed, the word 'allow' would be sufficient to 'permit' a rejection damage claim to be classified as a pre-bankruptcy unsecured claim, and the word 'determine' would serve no apparent purpose whatever." American HomePatient, 414 F.3d at 618.  Both the Bankruptcy

Court in this case and the Sixth Circuit Court of Appeals in
American HomePatient found such an interpretation untenable
because it is inconsistent with the long-established canon
of statutory interpretation that courts must "give effect,
if possible, to every word and clause of a statute."
American HomePatient, 414 F.3d at 618 (quoting Duncan v.
Walker, 533 U.S. 167, 174 (2001)); In re Enron, 330 B.R. at
390, 392.  The Bankruptcy Court concluded that the statutory
interpretation urged by Taunton would be achieved simply by
providing that the claim would be "allowed" or "disallowed"
and that such an interpretation was not tenable because it
failed to confer independent meaning upon the word
"determined."  The Bankruptcy Court, like the Sixth Circuit
Court of Appeals, was unwilling to adopt a statutory
construction that rendered the word "determined" redundant.
Indeed, the statute specifies that a claim "shall be
determined, and allowed...," indicating strongly that
"determined" and "allowed" are not meant to represent the
same concept.

Taunton has failed to provide any plausible independent
meaning for the word "determined" in Section 502(g).
Section 502(g) clearly provides that a claim arising from
the rejection of an executory contract under Section 365
"shall be determined ... the same as if such claim had

8

arisen before the date of the filing of the petition." 11
U.S.C. § 502(g). Section 502(g)'s additional provision
relating to whether the claim should be "allowed under
subsection (a), (b), or (c) of this section, or disallowed
under subsection (d) or (e) of this section" is set off in
commas. Taunton's arguments would, as the Bankruptcy Court
found, impermissibly render the term "determined"
superfluous and redundant.

Taunton argues that the Bankruptcy Court's reading of
the statute is erroneous because an alternative
interpretation of Section 502(g) is possible under which
"determined" means "to fix the form" of the claim, and thus
"functions to establish the form of the claim, i.e., whether
the claim is a pre-petition or post petition claim." This
interpretation does not, however, avoid the problem of
rendering the word "determined" superfluous. A statutory
provision without that word, establishing that a "claim
arising from the rejection, under section 365 of this title
... of an executory contract ... shall be allowed under
subsection (a), (b), or (c), of this section or disallowed
under subsection (d) or (e) of this section, the same as if
such claim had arisen before the date of the petition,"
would be sufficient to classify the claim as a pre-petition
claim and to indicate that the provisions elsewhere in

Section 502 governing which claims are to be allowed and which are to be disallowed apply. The word "determined" adds nothing if those are the only purposes of Section 502(g), a result at odds with established principles of statutory construction.

The Connecticut Light and Power Company ("CLPC"), which filed an amicus curiae brief on behalf of Taunton, argues that "determined" in Section 502(g) does not refer to determining the amount of damages, because Section 502(b) provides more explicitly that "[e]xcept as provided in subsection (e)(2),(f),(g),(h), and (i) of this section, if such objection to the claim is made, the court ... shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition." CLPC argues that there is no explicit direction in Section 502(g), as there is in Section 502(b), that the amount of the claim is to be determined as of the filing of the petition, and Section 502(b) explicitly excludes Section 502(g) rejection claims. The comparison with Section 502(b), however, is at best inconclusive. While Section 502(g) does not contain the explicit language found in Section 502(b) establishing that it is "the amount of such claim" that the court must determine, the use of the word "determine" in both subsections provides support for a

conclusion that Congress understood "determining" a claim to
involve the mathematical calculation of the claim and not
fixing the type of claim.

The parties argued at length in their briefs about the
history of the rejection as breach doctrine, including
arguments relating to the decisions in Palmer v. Conn. Ry. &
Lighting Co., 311 U.S. 544 (1941); In re New York, N.H. & H.
R. Co., 298 F.2d 761 (2d Cir. 1962); and In re Marshall's
Garage, 63 F.2d 759 (2d Cir. 1933).  Those cases, however,
involved interpretation of the Bankruptcy Act of 1898, and
did not involve interpretation of Section 502(g) of the
Bankruptcy Code.  The parties also dispute the import of the
decisions in In re O.P.M. Leasing Services, Inc., 79 B.R.
161 (S.D.N.Y. 1987), and In re O.P.M. Leasing Servs., Inc.
(Northrop), 56 B.R. 678 (Bankr. S.D.N.Y. 1986).  While those
decisions do construe Section 502(g), no argument was
presented to those courts that the amount of damages must be
determined as of the date of the petition.  The O.P.M. cases
did not, therefore, address the question presented in this
case.

**B.**

The parties agree that the amendments contained in the
Bankruptcy Abuse Prevention and Consumer Protection Act of

2005, Public Law 109-8, 119 Stat. 23 (the "2005

Amendments"), do not apply to this claim, which arose prior

to the adoption of those amendments by Congress.  The

parties dispute, however, the import of the 2005 Amendments

for determining the proper interpretation of Section 502(g)

as it was in effect at the time of Taunton's claim.  The

2005 Amendments add a new Section 562, which specifically

provides that damages arising from the rejection of certain

types of contracts, including forward contracts, shall be

measured from the earlier of the date of rejection or the

date of termination of the contract.  11 U.S.C. § 562.

Enron argues that the recent adoption of this provision,

which largely codifies Taunton's position in this case for

those contracts covered by the new section,[2] demonstrates

that the pre-existing law did not provide for damages to be

calculated in this way because it would have been

unnecessary to provide for damages to be calculated from the

date of rejection or termination for this subset of

executory contracts if Sections 365 and 502(g), as

---

[2] At argument the parties agreed that the contract at issue in
this case is a "forward contract" that would be governed by
Section 562(a) if the dispute had arisen after the effective date
of the new Section 562.  Section 562, however, did not take effect
until 2005, well after Taunton's claim in the Bankruptcy Court,
and is therefore not controlling.  The Court looks to Section 562
only insofar as is helpful in deciding the correct interpretation
of Section 502(g) as it was in effect at the time of Taunton's
claim.

previously enacted, already established this rule for all such contracts.

Enron also notes that the new Section 502(g)(2), which affords a pre-petition claim for damages relating to the contracts covered by Section 562, merely states that such claims shall be "allowed" or "disallowed" and does not use the word "determined" at all. 11 U.S.C. § 502(g)(2). Enron contrasts Section 502(g)(2) with Section 502(g)(1), which contains the exact language, unamended, of the previous Section 502(g). In Enron's view, the fact that Section 502(g)(1) continues to specify that claims falling outside the subset of contracts identified in Section 562 shall be "determined" as if the "claim had arisen before the date of the filing of the petition" indicates that the word "determined" is intended to fix the last business day before the filing of the petition as the effective date for calculating damages, as found by the Bankruptcy Court. The word "determined," Enron argues, is omitted from Section 502(g)(2) because it is not needed in that subjection; the date from which damages should be calculated for contracts covered by Section 562 is instead established by the text of Section 562.

Taunton counters that the provision may have been intended to clarify, rather than mark a departure from, pre-

13

existing law. However, this argument makes little sense.
Congress plainly created a subset of executory contracts and
determined that damages for the rejection of those contracts
would be determined on the earlier of the date of rejection
or termination. It left untouched the prior Section 502(g)
to refer to all other executory contracts.[3] There would be
no reason for Congress to "clarify" the law with respect to
only some executory contracts and to leave the statute the
same with respect to the remaining executory contracts if,
as Taunton argues, the statute in fact provides the same
rule with respect to both sets of contracts.

Taunton also argues that the reference to a "claim for
damages calculated in accordance with Section 562" in the
new Section 502(g)(2) indicates that the word "determined"
in the former Section 502(g) and the new Section 502(g)(1)
means something other than the calculation of damages
because Congress would have used the word "determined"
instead of "calculated" if it understood "determined" to
refer to the calculation of damages in the context of
Section 502(g). This argument sheds no light on the
Congressional intent in using the word "determined" in
Section 502(g) of the Bankruptcy Code because, as initially

---

[3] Of course it is the prior Section 502(g) that applies to the
contract in this case because the rejection occurred before the
2005 Amendments.

adopted, there was no Section 502(g)(2) and thus no comparison between "determined" and "calculated" could have been made.  In any event, while the use of two different words in the same statute may indicate that the words are intended to have distinct meanings, this conclusion is not automatic.  Indeed, the newly adopted Section 502(g)(2) expressly refers to claims "for damages calculated in accordance with section 562," while Section 562 itself provides that "damages shall be measured."[4]  11 U.S.C. § 502(g)(2); 11 U.S.C. § 562(a).  Any asymmetry of terminology resulting from the use of the word "determined" in what was Section 502(g), and is now Section 502(g)(1), and the use of the word "calculated" in Section 502(g)(2) is not dispositive where a similar asymmetry exists between the use of "calculated" in Section 502(g)(2) and "measured" in Section 562, a section expressly referenced in Section 502(g)(2) and added to the Bankruptcy Code at the same time by the same act of Congress.  See Pub. L. 109-8 § 910(a)(1); (b)(2), 119 Stat. 23, 184-85.

On balance, Enron has the more persuasive argument that, in enacting the 2005 Amendments, Congress created a new measure of damages for certain executory contracts and

---

[4] Indeed, each of the three subsections of Section 562 refer to damages being "measured."  11 U.S.C. § 562.

thereby implicitly recognized that prior Section 502(g),
which became Section 502(g)(1), provided a different rule:
namely, the rule recognized by the Bankruptcy Court, that
damages are to be determined on the last business day before
the petition is filed.  However, enactments of a subsequent
Congress are one of the weakest tools for statutory
construction because they are an uncertain guide to what the
prior Congress actually enacted.  See, e.g., O'Gilvie v.
United States, 519 U.S. 79, 90 (1996); United States v.
Price, 361 U.S. 304, 313 (1960).  In this case, it can be
definitively said that whatever light is shed by the 2005
Amendments does not help Taunton.

     The fundamental question remains how properly to
interpret the term "determined" in Section 502(g).  The
Bankruptcy Court concluded that the statute requires fixing
the amount of the claim as of the last business day prior to
filing the petition.  There is nothing in the legislative
history of Section 502(g) to overcome that straightforward
reading.  In the absence of a plausible alternative reading
of Section 502(g) that gives independent meaning to the
terms "determined" and "allowed" or "disallowed," the Court
concludes that the Bankruptcy Court's interpretation is
correct.  Because the Court agrees with the Bankruptcy Court
that Section 502(g) of the Bankruptcy Code, as it was in

force at the time this claim arose, required damages with respect to Taunton's claim to be valued as of the last business day prior to the date of Enron's bankruptcy petition, the cases cited by Taunton for the proposition that rejection of an executory contract by a debtor does not completely terminate the contract are not controlling. See, e.g., Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne), 114 F.3d 379, 386-87 (2d Cir. 1997). While courts must look to state contract law principles to determine such issues as whether the non-debtor party to the contract is relieved of its obligations under the contract by the debtor's breach, see id. at 387, the Bankruptcy Court correctly noted that state contract law is only controlling where the Bankruptcy Code itself does not establish the rule to be applied. In re Enron, 330 B.R. at 392; see also American Homepatient, 414 F.3d at 620. Because the Court concludes that the Bankruptcy Code does establish the date from which damages are to be calculated in this case, it follows that the cases applying state contract law rules of decision are not applicable.

Finally, as the Bankruptcy Court noted, Taunton had the option under 11 U.S.C. § 365(d)(2) to move to compel Enron to determine within a more limited time frame whether it chose to accept or reject the contract. In re Enron, 330

B.R. at 393 & n.9.  Had Taunton done so in this case before the market price of power reached its late 2002 level, Enron might have accepted the contract, which would have later proven beneficial to Taunton, or it might have rejected the contract early enough to permit Taunton to find replacement suppliers offering prices below, at, or only slightly above the contract price.  The existence of this mechanism to compel such an expedited determination by the debtor, within the procedures established under Section 365(d)(2), provides creditors in Taunton's position with a means of avoiding being subjected to the fluctuations of market prices for the goods at issue in their contracts, while furthering the overall goal of the Bankruptcy Code to enable the debtor to arrange its affairs and start anew.

### CONCLUSION

For the reasons explained above, the order of the Bankruptcy Court is **affirmed**.

**SO ORDERED.**

**Dated:  New York, New York**
**August 23, 2006**

John G. Koeltl
United States District Judge

18